IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  11-cv-01285-LTB-CBS

SHARON PALAGE,

        Plaintiff,

v.

HCA-HEALTHONE, LLC, d/b/a NORTH SUBURBAN MEDICAL CENTER, a Colorado limited
liability corporation,

HSS, INC., d/b/a HOSPITAL SHARED SERVICES, INC., a Colorado corporation,

        Defendants.

_____

ORDER
_____

This matter is before me on a Motion for Summary Judgment filed by Defendant

HCA-HealthONE, LLC ("HealthONE"), d/b/a North Suburban Medical Center ("North

Suburban") [**Doc # 28**] and a Motion for Summary Judgment filed by Defendant HSS, Inc., d/b/a

Hospital Shared Services, Inc. ("HSS") [**Doc # 27**], seeking dismissal of the employment

discrimination claims filed against them by Plaintiff Sharon Palage.  Oral arguments would not

materially assist me in my determinations.  After consideration of the parties' arguments, and for

the reason stated, I GRANT the motion filed by HealthONE, and I GRANT IN PART AND

DENY IN PART the motion filed by HSS as follows.

## I. Underlying Facts

Plaintiff was hired as a security officer by Defendant HSS on June 12, 2007.  Plaintiff

was assigned to the Healthcare Security Division, which provides security services to various

hospitals and health care facilities.  Defendant HealthONE contracted with HSS to provide it

security services at its various facilities, including North Suburban Medical Center.

After she was hired by HSS, Plaintiff worked at several locations before beginning a

regular security post at North Suburban in December 2007.  Between December 2007 and her

resignation in January 2009, Plaintiff was assigned and worked exclusively at North Suburban as

a security officer.  Her supervisor was Lieutenant Matt Felker who managed approximately ten

to twelve security officers, and was responsible for overseeing the day-to-day security operations

at the North Suburban facility.  Mirza Baig, Aaron Francisco, and Eric Lewis were also security

officers employed by HSS and stationed at North Suburban.

Plaintiff asserts that while at work at North Suburban she was subjected to repeated

comments and questions by her male co-employees about sexual matters, such as breasts, oral

sex/blow jobs, and her sexual preferences and habits, as well as repeated unwelcome sexual

advances.  Plaintiff testified in her deposition that she complained to Lt. Felker, her supervisor,

that she was subjected to sexually inappropriate behavior of fellow male co-workers, but that he

"was totally unresponsive to her complaints and made no reasonable efforts to stop the offensive

behavior."  For example, she testified that two fellow male security officers called her a "f-ing

stupid biker bitch," and when she complained to Lt. Felker about those remarks, his response

was to laugh and say "you're moving up in the world."  Plaintiff also maintains that Lt. Felker

himself personally subjected her to sexually inappropriate language and allowed offensive

remarks to be made to her in his presence.  She testified about an incident in which a male

security officer asked her, in front of Lt. Felker, if she would be willing to give her boyfriend

oral sex while he was sitting on the toilet.  When Plaintiff responded that the security officer and

Lt. Felker  "were disgusting," Lt. Felker's only response was to laugh.  She further testified that

when she returned to work after a weekend off, Lt. Felker would ask her who she had gone out

with and whether she had sex.  Plaintiff indicated that she would respond "it's none of your

business" and would ask him to stop.

In December 2008, Lt. Felker took a vacation and Security Officer Mirza Baig acted as

the interim supervisor.  During that time Security Officers Lewis and Francisco told Officer Baig

that Plaintiff had exposed her breasts to them in the HSS security office at North Suburban.

Officer Baig reported the incident to Henry Biela, the Plant Operations Director at North

Suburban.  Mr. Biela was responsible for overseeing the facility operations at North Suburban,

as well as the contracted services provided by companies such as HSS.  During that meeting

Officer Baig indicated that Plaintiff made him feel uncomfortable because of her inappropriate

discussions about sex, and a time when she rubbed against him while walking past him in the

security office.

When Lt. Felker returned from his vacation, sometime before January 1, 2009, Mr. Biela

relayed Officer Baig's report to Lt. Felker.  Lt. Felker told Mr. Biela that an investigation would

be conducted.  During that meeting, or shortly thereafter, Lt. Felker told Mr. Biela about one of

his own experiences with Plaintiff, in which she told Lt. Felker that she would wake up her

boyfriend in the morning with a "blow job."

Thereafter, Lt. Felker scheduled interviews with Officers Lewis and Francisco on

January 8, 2009, in Mr. Biela's office with Mr. Biela present and taking notes.  He first

interviewed Officer Lewis, who denied that Plaintiff had exposed her breasts; in fact, Officer

Lewis admitted that he and Officer Francisco were only "messing or playing" with Officer Baig.

During Officer Francisco's interview he also acknowledged that there had been no breast exposure incident, that they had only been "joking," and he took responsibility for making the inaccurate statement to Officer Baig.

Based on these admissions, Lt. Felker concluded that Plaintiff had not exposed her breasts to anyone at work.  However, because Officer Baig had complained of Plaintiff's "inappropriate discussions," Lt. Felker then interviewed Plaintiff.  During the interview Lt. Felker asked Plaintiff whether she had engaged in any inappropriate conversations with the other security officers.  She denied that she had any inappropriate conversations, but then became visibly upset and alluded to an issue with a male co-worker, and stated that she did not want him to lose his job.  Ultimately, she stated that on December 8, 2008, she and Officer Francisco were in the security office at North Suburban when they started discussing penis sizes.  Plaintiff indicated that she became uncomfortable and turned to leave the office, when Officer Francisco asked her to turn around.  When she did, Officer Francisco had his penis exposed.  Officer Francisco then asked Plaintiff if she thought "it was long enough to suck on," at which time she turned and left the office.  When asked why she had not reported this incident sooner, Plaintiff responded that she did not want Officer Francisco to lose his job because he had a wife and two kids.  Lt. Felker then told Plaintiff and Mr. Biela that he needed to contact his supervisor and HSS's Human Resources Department.  Sometime after his interview with Plaintiff, Lt. Felker and Mr. Biela had a brief meeting with Jennifer Aldefer – the COO of North Suburban Medical Center – who indicated that she wanted HSS to re-assign both Officer Francisco and Plaintiff to another facility.

Lt. Felker subsequently contacted his supervisor and HSS's Assistant Director of Human Resources, Debbie Little.  The HSS Human Resources Department then took over the investigation.  On January 9, 2009, HSS Investigator David Mongeau contacted Plaintiff by telephone.  During that conversation, Plaintiff stated that Officer Francisco had initiated the sexually-charged conversation on December 8, 2008.  Plaintiff further indicated that she did not report the incident earlier because she was embarrassed and did not want Officer Francisco to lose his job.  Mr. Mongeau also met with Officer Baig, who described Officer Francisco as a "sexual pervert" and described Plaintiff as a "potty mouth" who routinely discussed her sexual activities with her boyfriends at work.  Officer Baig also stated that in late December 2008, he was in the security office with Plaintiff when she grabbed his hand and pulled it toward her breast.

Mr. Mongeau then met with Officer Francisco who admitted that he had exposed his penis to Plaintiff, and also provided a written statement describing the incident.  In that statement Officer Francisco stated that he was in the security office with Plaintiff when she commented that she "was tired of meeting the same kind of men" and that she "woke her man up with oral sex."  Plaintiff then said that she "liked" Officer Francisco, "but she heard that he had a small penis."  Officer Francisco then admitted that, in order to prove that he did not have a small penis, he exposed himself to Plaintiff.  HSS subsequently terminated Officer Francisco's employment, either the same day as his confession or the following day.

About four days later, on January 13, 2009, Plaintiff met with Mr. Mongeau and Ms. Little.  At this meeting, they informed Plaintiff that Officer Francisco had been terminated and then apparently informed her that she was under investigation.  Mr. Mongeau told Plaintiff that if

she remained at HSS, she could no longer work at North Suburban, and he explained that if an employee is asked to be removed from a facility by a client, as here, HSS's policy is that it will not assign that employee to any of the client's other facilities.  Plaintiff testified in her deposition that Mr. Mongeau indicated that it was better that she resign rather than be fired, and if she didn't resign he would find a way to have her fired.  Ms. Little then told her that HSS "didn't know what they were going to do" and Ms. Little testified that she indicated that HSS's investigation would result in one of three possible outcomes: (1) HSS could give her an opportunity to work at another facility; (2) HSS could terminate her depending on the results of the forthcoming investigation; or (3) Plaintiff could resign from HSS.

The next day, on January 14, 2009, Plaintiff called Ms. Little and stated that she had chosen to resign.  Her letter of resignation noted that she felt that resigning was the only option, and "[s]ince it was presented to me by [the HSS] investigator that resigning would be better for me than being terminated[,] I have taken to only option I believe was left for me by resigning effective this date."

Thereafter, on January 29, 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC").  After receiving her right-to-sue letter from the EEOC, Plaintiff filed this lawsuit asserting three claims for relief against both HSS and HealthONE/North Suburban pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"):  Gender Discrimination; Hostile Work Environment; and Retaliation.  Defendants have filed the motions at issue here asserting that they are entitled to summary judgment on all of Plaintiff's claims against them.

## II.  Standard of Review

When deciding a motion under Fed. R. Civ. P. 56, summary judgment shall be granted

for the movant if the pleadings, depositions, answers to interrogatories, admissions, or affidavits

show that there is no genuine issue of material fact and the moving party is entitled to judgment

as a matter of law.  The non-moving party has the burden of showing that there are issues of

material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986).  If a reasonable juror could not return a verdict for the non-moving party,

summary judgment is proper and there is no need for a trial.  *Id.* 477 U.S. at 323.  The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  However, summary

judgment should not enter if, viewing the evidence in a light most favorable to the plaintiff and

drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict

for the plaintiff.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 252; *Mares v. ConAgra Poultry*

*Co.,* 971 F.2d 492, 494 (10th Cir. 1992).

## III.  HealthONE/North Suburban's Motion

I first address HealthONE/North Suburban's motion seeking judgment in its favor on the

basis that it is undisputed that it was not Plaintiff's employer.

Defendant HealthONE contracted with HSS to provide security guards to its various

facilities – including North Suburban Medical Center – in a written Agreement for Provision of

Healthcare Security Services dated March 21, 2006.  Specifically, the Agreement provides that

"HSS will furnish [HealthONE] with uniformed healthcare security officers and security support

services according to the request of [HealthONE] in terms of staffing levels, deployment, and

level of security services." [Doc # 28, Ex. 3, pg.1]  In its motion, HealthONE argues that it did

not hire, pay or provide benefits to Plaintiff, nor did it assign her work location, work shifts, or

her supervisor.  Moreover, it notes that Plaintiff claims she was sexually harassed by other HSS

employees, the claim was investigated by HSS, and she asserts that she was constructively

discharged by HSS personnel.  It further argues that the clear language of its Agreement with

HSS provided that "HSS is performing the services required hereunder as an independent

contractor and not as an employee, agent, partner of or joint venture with [HealthONE]."  [Doc #

28, Ex. 3, pg. 4]  Finally, when Plaintiff was asked in her deposition if she had ever been

employed by HealthONE, she responded "No."  [Doc # 28, Ex. 1, pg. 25]  Thus, it asserts that it

is undisputed that HSS is Plaintiff's employer – not HealthONE or North Suburban – and that it

is not liable to her for any alleged employment discrimination.

Plaintiff argues, in response, that the Agreement contains numerous provisions that

provide for joint control by both Defendants over the terms and conditions of the employment of

the security officers at North Suburban.  Plaintiff refers to provisions of the Agreement that

provide for:  the transmittal of various information and reporting between HSS and the

HealthONE Facility Security Representative [Doc # 28, Ex. 3, pg. 6-7]; the joint development

and management of a Security Program which provides that a HSS security representative be a

member of HealthONE's management activities [Doc # 28, Ex. 3, pg. 2]; a requirement that

HealthONE has the right to have a security officer removed from further service under certain

specific circumstances, such as if they are convicted of a felony [Doc # 28, Ex. 3, pg. 3-4]; that

HealthONE has the right to reject the assignment of any security officer provided by HSS "at

any time and for any reason" [Doc # 28, Ex. 3, pg. 4]; and that it "participate" in the evaluation of the security officers [Doc # 28, Ex. 3, pg. 4].  Plaintiff also asserts that, in this case, the decision to "terminate [her] from any further employment at the North Suburban Medical Center and any other HealthONE facility was made jointly by the two Defendants."

Plaintiff argues, as a result, that HealthONE and North Suburban exercised sufficient control over the terms and conditions of her employment to be considered a "joint employer" with HSS for vicarious liability under Title VII.  Joint employer analysis applies to independent entities when "the entities share or co-determine those matters governing the essential terms and conditions of employment."  *Sandoval v. City of Boulder, Colo.* 388 F.3d 1312, 1323 (10th Cir. 2004)(*quoting Bristol v. Board of County Comm'rs of County of Clear Creek,* 312 F.3d 1213, 1218 (10th Cir. 2002))(noting that "courts look to whether both entities exercise significant control over the same employees").  "The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  *Sandoval v. City of Boulder, supra,* 388 F.3d at 1323 (*quoting Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 n.4 (6th Cir. 1997)).

"When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker. . . . [t]hus two entities may both be a worker's employer if they share or co-determine those matters governing the essential terms and conditions of employment."  *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1330 (10th Cir. 2002).  "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under

certain circumstances." *Bristol v. Board of County Comm'rs, supra,* 312 F.3d at 1219.

HealthONE argues that the undisputed facts establish that it did not exercise significant control over Plaintiff's employment sufficient to establish joint employer liability.  It asserts that HealthONE and HSS do not share or co-determine those matters governing the essential terms of Plaintiff's employment including rate of pay, benefits, facility assignments, provision of uniforms and tools, shift assignments and performance evaluations.  Although HealthONE did have the contracutal ability to request the re-assignment of an HSS employee assigned to its facilities, this does not equate to either hiring or firing those HSS employees.  While HealthONE reserved the right to reject the assignment of any particular security officer for any reason to its North Suburban facility, it did not have any authority to terminate Plaintiff's employment relationship with HSS, nor is there any evidence that it attempted to involve itself in that decision as Plaintiff had the option of working for any other HSS facility.

I agree with HealthONE that even when the facts are viewed in favor of Plaintiff, there is insufficient evidence that it shared or co-determined matters governing the essential terms and conditions of her employment in order to establish joint employer liability.  Plaintiff's primary argument – that the decision to "terminate [her] from any further employment at the North Suburban Medical Center" was made jointly by the two Defendants – constitutes  a mis-characterization of the evidence.  While the management at North Suburban asked that she no longer be assigned to its facility – as it was contractually permitted to do – it did not and could not terminate her from her employment with HSS.  I conclude the evidence that HealthONE/ North Suburban exercised significant control over the HSS security officers is insufficient, as a matter of law, to assign joint employer liability for the purposes of Title VII liability.

In so doing, I reject Plaintiff's assertion that the EEOC Determinations on her Charge of Discrimination – a separate one issued by the EEOC for both HSS and for HealthONE, and which find reasonable cause to believe that Plaintiff was subjected to a sexually hostile work environment and retaliation for opposing discrimination – raise a genuine issue of material fact as to whether HealthONE is liable under Title VII pursuant to a joint employer theory.  As discussed *infra*, I have concluded that the EEOC Determinations are not admissible in this case. More importantly, the fact that the EEOC issued a determination against HealthONE, separate and apart from the one against HSS, is not material to joint employer finding as there is simply no analysis therein related to HealthONE's possible status as an employer in this case.  As a result, I grant HealthONE/North Suburban's motion seeking summary judgment in its favor.

## IV.  HSS's Motion

HSS argues that it is entitled to summary judgment on each of Plaintiff's Title VII claims for Gender Discrimination, Hostile Work Environment, and Retaliation.

## A. Gender Discrimination

I first address HSS's assertion that Plaintiff's Title VII claim of gender discrimination must be dismissed for failure to exhaust her administrative remedies.  Specifically, HSS contends that Plaintiff failed to raise this claim in the Charge of Discrimination she filed with the EEOC and, as such, she is barred from raising it here for lack of subject matter jurisdiction.

In the Tenth Circuit, the exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII.  *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996).   A plaintiff must therefore exhaust his or her administrative remedies before bringing suit

under Title VII.  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997).  This rule applies to  "each discrete incident" of alleged discrimination or retaliation, because each incident "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."  *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)(*quoting Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 l.Ed.2d 106 (2002)).

The first step to administrative exhaustion is the filing of a Charge of Discrimination with the EEOC.  *Jones v. Runyon*, *supra*, 91 F.3d at 1399 n.1 (noting that, although a timely filing is not jurisdictional in nature, the filing itself is a jurisdictional requirement).  In determining whether a plaintiff has exhausted administrative remedies, the court's "inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge.  In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."  *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).   The plaintiff has the burden of establishing a court's subject matter jurisdiction over his or her claims.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998).

HSS argues that Plaintiff's EEOC Charge of Discrimination in this case focused exclusively on her allegations related to a hostile work environment and of retaliation for complaining about it, and failed to contain any allegations that would support her claim that she was discriminated against in the terms and conditions of her employment by being denied training, promotions, raises or other benefits on the basis of her sex. [Doc #1]  Plaintiff's Charge of Discrimination alleged, as follows:

I was hired on June 12, 2007 and most recently performed the duties of a Security Officer.

Because it is a predominantly male work environment, I listened to male coworkers talk about sex on a regular basis and engaged in their conversations in an effort to fit in. However, on December 8, 2008, a fellow male Security Officer started talking to me about the size of penises. He then went beyond talking and exposed his penis to me. He then started asking me about the size of his penis. Later, he then sent to me a text message asking, "*So what do you think*?"

I complained to my employer and a male HSS Investigator told me that it was my fault that the male Security Officer exposed his penis to me because I let the males talk about sex around me and never told them to stop talking about sexual matters. He said I should resign rather than be discharged. Subsequently, I was constructively discharged on January 14, 2009.

I believe I have been discriminated against because of my sex (female) and retaliated against for opposing discrimination in the workplace in violation of Title VII of the Civil Rights Act of 1964, as amended. [Doc # 27, Ex. 17]

I agree that Plaintiff's Charge of Discrimination – as set forth above in its entirety – did not allege facts underlying or supporting her claim of Gender Discrimination; rather, it only consisted of allegations supporting her Hostile Work Environment and Retaliation claims.  I note that Plaintiff does not contest that she did not assert facts supporting her Gender Discrimination claim, and she concedes that the EEOC did not make a finding of reasonable cause or expressly address such claim.  She argues, however, that she did raise the issue in her EEOC "online questionnaire" at intake, in which she stated that "I was repeatedly denied access to materials necessary for promotion. Several male officers with less seniority were given the materials during the time I was with HSS, despite my frequently asking for them." [Doc #31, Ex. 14]

The Tenth Circuit had recognized that an intake questionnaire may be used by a plaintiff to exhaust his or her administrative remedies, by asserting a claim of discrimination, when the questionnaire meets the requirements of a Charge of Discrimination.  *Jones v. U.P.S., supra,* 502 F.3d at 1184.  In order to do so, the Court found that the questionnaire must meet the "minimum"

requirements, including being written, signed, and verified pursuant to 29 C.F.R. § 1601.9.  *Id.* at 1184 n.3 (noting that a Charge is "verified" if it is "sworn to or affirmed before a notary public, designated representative of the EEOC, or other person duly authorized to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty or perjury").  Because the plaintiff's intake questionnaire in *Jones v. U.P.S.* was sufficiently precise to identify the parties and to describe generally the action or practices complained of, and it was written signed and verified, the Court held that it met the "minimum" requirements of a Charge. *Id.* at 1184.

In this case, Plaintiff cannot meet her burden because the intake/online questionnaire does not meet the minimum requirements of a Charge of Discrimination in that it is undisputed that it is neither signed nor verified.  Moreover, Plaintiff has not argued nor provided evidence that she manifested an intent to activate the administrative process via the questionnaire, or that the EEOC treated her questionnaire as a Charge of Discrimination.  *See Jones v. U.P.S., supra,* 502 F.3d at 1185 (in order to prove that the questionnaire should be considered a Charge of Discrimination, for the purpose of exhausting administrative remedies, the plaintiff must show that it met the minimum requirements, that he or she manifested an intent to activate the administrative process, and that the EEOC ultimately treated it as a Charge of Discrimination).

Thus, Plaintiff has not exhausted her administrative remedies as to her Gender Discrimination claim and, as such, she has failed to met her burden to prove jurisdiction.  HSS is therefore entitled to summary judgment on this claim.

**B.  Hostile Work Environment**

HSS next argues that it is entitled to summary judgment on Plaintiff's Hostile Work Environment claim because it maintains that she cannot show, as a matter of law, that she was subjected to severe or pervasive harassment.

In order to make out a *prima facie* case of sex discrimination based on a hostile work environment, a plaintiff must show:  (1) that he or she was discriminated against because of his or her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of his or her employment and created an abusive working environment. *Morris v. City of Colorado Springs,* 666 F.3d 654, 663 (10th Cir. 2012).  This includes a finding that the plaintiff's work environment "was both objectively and subjectively hostile or abusive." *Id.* at 664; *see also Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(ruling that conduct is sufficiently severe or pervasive if (1) the conduct "create[d] an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive" and (2) the plaintiff "subjectively perceive[d] the environment to be abusive").

For the purposes of this motion, HSS argues only that Plaintiff cannot prove, as a matter of law, that the gender discrimination was objectively severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment.  Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir.

15

2005)(*quoting Harris v. Forklift  Sys.*, *supra*, 510 U.S. at 23).  There is no "mathematically precise test" for determining whether the conduct is sufficiently severe or pervasive.  *Harris v. Forklift Sys.*, *supra*, 510 U.S. at 22.

As an initial matter, I address Plaintiff's contention that the EEOC's Determination on her Charge – which found reasonable cause to believe that Plaintiff was subjected to a hostile work environment and was forced to resign in retaliation for opposing discrimination – is admissible evidence in support of her Hostile Work Environment claim.  Plaintiff cannot cite to any Tenth Circuit authority for the proposition that an EEOC finding of reasonable cause is admissible for the purpose of ruling on summary judgment.  Instead, she relies upon cases from other jurisdictions.  *See e.g. Barfield v. Orange County,* 911 F.2d 644, 649 (11th Cir. 1990); *Plummer v. Western International Company,* 656 F. 2d 502, 505 (9th Cir. 1981); *see also Mitchell v. Office of Los Angeles County Superintendent of Schools,* 805 F.2d 844, 847 (9th Cir. 1986)(stating that "an EEOC finding of reasonable cause is 'sufficient at least to create an issue of fact' requiring proceedings beyond the summary judgment stage").

I find, however, that the EEOC Determination in this case is conclusory and results in no probative value to the issues presented here.  As to the merits of her claim, the Determination provides only that:

> I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe [Plaintiff] was subjected to hostile working environment in violation of Title VII.  Furthermore, based on all the evidence, there is reasonable cause to believe [Plaintiff] was forced to resign in retaliation for opposing discrimination in the workplace. [Doc # 32, Ex. 1]

There is no specific discussion of the evidence relied upon, or how that evidence related to the merits of the EEOC's Determination.  *See Barfield v. Orange County, supra*, 911 F.2d at

650 (indicating that EEOC Determinations "vary greatly in quality and factual detail," and thus the decision whether to admit them are within the discretion of the trial judge).  In exercising my discretion, I rule that the EEOC finding of reasonable cause in this case is not admissible evidence.  *E.E.O.C. v. Loral Aerospace Corp.*, 162 F.3d 1172, 1998 WL 769820, 2 (10th Cir. 1998)(unpublished)(finding no abuse of the trial court's discretion in excluding at trial an EEOC Determination when the EEOC was a party to the litigation); *see also Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1331 (10th Cir. 1999)(ruling that "when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one").

    In addition to the EEOC finding, Plaintiff refers to the following evidence to support a finding of objectively severe and pervasive harassment based on her gender.  First, of course, she refers to the incident in which Officer Francisco discussed penis sizes generally, and then exposed himself to Plaintiff and asked her "is this long enough to suck on?" [Doc #32, Ex. 8, 10 &11]   To the extent that Plaintiff argues that this single incident of sexual harassment is sufficiently severe or pervasive to alter the conditions her employment and, in turn, created an abusive working environment, I disagree.  *See Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001)(finding that an isolated incident may suffice "if the conduct is severe and threatening," such as in the case of sexual assault of a psychologist by a patient that was clearly abusive, dangerous, humiliating, and traumatizing).

    However, contrary to HSS's argument, Plaintiff does not rely solely upon the exposure incident to support her claim.  She refers to her deposition testimony about the general workplace demeanor, in which she contends she was subjected to repeated comments by her

male co-workers about sexual matters related to women in general, and to her specifically. [Doc #32, Ex. 4, pp. 155-56]  She points to specific events such as an incident in which male co-workers referred to her as a "stupid biker bitch" and when she complained to her supervisor, Lt. Felker, he laughed and told her she was moving up in the world. [Doc #32, Ex. 4, pg. 158]  She also refers to her testimony about a time when a co-worker asked her – in the presence of Lt. Felker – if she would be willing to give her boyfriend a blow job while he was on the toilet. [Doc #32, Ex. 4, pp. 152-3]  She asserts that Lt. Felker was unresponsive to her complaints, as well as to a complaint by a night supervisor at North Suburban who claimed that Officer Francisco had harassed her by asking her out after she repeatedly after she told him she was happily married. [Doc #32, Ex. 9, pp. 84-90]  In addition, she alleges that Lt. Felker himself often asked her about whether she had sex over the weekend. [Doc #32, Ex. 4, pg. 150]  Finally, she notes that her male co-workers intentionally made a false accusation that she had exposed her breasts to them at work as a joke. [Doc #32, Ex. 5, pp. 135-38]

I conclude that this evidence, when viewed in favor of Plaintiff, is sufficiently severe and pervasive for a jury to find that it altered the conditions of Plaintiff's employment in order to support her Hostile Work Environment claim.  While the exposure incident was isolated, it was clearly egregious, unacceptable behavior that appears to be an escalation of a pattern of increasingly severe sexual hostility.  Although the frequency of the specific incidents alleged were apparently not daily or continuous, there is evidence that it was considered normal workplace behavior – not merely singular or unusual offensive utterances – and was sometimes humiliating.  While there is evidence that Plaintiff participated in the sexual nature of the conversations – including an admission in her EEOC Charge of Discrimination that she "listened

to male co-workers talk about sex on a regular basis and engaged in their conversations in an

effort to fit in" – she also provides evidence that she indicated to them and her supervisor that

such conversation was unwelcome, but that her complaints went unheeded.  Under the totality of

the circumstances, I conclude that Plaintiff has met her burden to show objectively, and

subjectively, severe or pervasive discrimination, based on her sex, sufficient to alter the

conditions her employment and create an abusive working environment.

HSS also argues, in the alternative, that even if Plaintiff can establish her *prima facie*

case for her Hostile Work Environment claim, it cannot be held liable.  *See Ford v. West*, 222

F.3d 767, 775 (10th Cir. 2000)(in addition to the existence of a sexually hostile work

environment, a plaintiff must establish a basis for imposing liability upon the

defendant/employer).

As to liability for acts of non-supervisory co-workers, an employer may be held liable if

the plaintiff can establish that "the employer had actual or constructive knowledge of the hostile

work environment but did not adequately respond to notice of the harassment."  *Adler v.

Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998)(citations omitted).  However, Plaintiff

has alleged not only harassment by co-workers, but also that her supervisor, Lt. Felker, was

aware of and participated in the harassment.  *Id.* (noting that an employer may be liable in

"failing to remedy or prevent a hostile or offensive work environment of which

management-level employees knew, or in the exercise of reasonable care should have known").

As to liability for acts of a supervisor, the Tenth Circuit has found vicarious liability to an

employer in two situations.  First, the employer is vicariously liable when the supervisor's

harassment culminates in a tangible employment act, such as discharge, demotion, or undesirable

19

reassignment.  In that situation, the employer has no affirmative defense available.  *Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1058–59 (10th Cir. 2009)(*quoting Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).  Second, an employer may be vicariously liable for a hostile work environment, even absent a tangible employment action.  However, in that circumstance, the employer will not be liable if it proves the following affirmative defense:  (1) that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Pinkerton v. Colo. Dept. of Transp.*, *supra*, 563 F.3d at 1059 (*quoting Burlington Indus. v. Ellerth*, *supra*, 524 U.S. at 765 and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).  This affirmative defense is often referred to as the *Faragher/Ellerth* defense.

HSS first argues that it is not liable under the first theory because Plaintiff was not subjected to a tangible employment act in that her voluntary resignation was not "an official act of the enterprise, a company act."  *Burlington Indus. v. Ellerth*, *supra*, 524 U.S. at 761-62 (providing that examples of tangible employment acts include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" by the employer).

Plaintiff asserts that there is a disputed issue of material fact as to whether she voluntarily resigned; rather, she contends that she was constructively discharged.  HSS argues, in response, that a constructive discharge is also not a tangible employment act, citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004) and *Chapman v.*

*Carmike Cinemas,* 307 Fed.Appx. 164, 2009 WL 57504 (10th Cir. 2009)(not selected for

publication).  However, in both those cases, the constructive discharge at issue was caused by

"harassment so intolerable as to cause a resignation" and, as such, "involve[d] both an

employee's decision to leave and precipitating conduct" which involved no official action.

*Pennsylvania State Police v. Suders, supra*, 542 U.S. at 148 (ruling that the precipitating conduct

in a constructive discharge may or may not involve official action); *Chapman v. Carmike*

*Cinemas, supra* (finding no tangible employment act when the plaintiff attributed her resignation

to her psychological state, rather than to an official act by the employer).

Here, Plaintiff has testified in her deposition that at her meeting with HSS Investigator,

Mr. Mongeau, and the Assistant Director of Human Resources at HSS, Ms. Little, on January 13,

2009, she was told her that if she remained at HSS, she could no longer work at North Suburban.

Mr. Mongeau then asked her if she would "like a piece of paper and pen to start writing your

resignation" and indicated to her that "it's better for [her] to resign than for HSS to fire" her.  He

also told her that "if I didn't resign my position, he'd find a way to fire" you and if she was fired,

he "would tell potential employers why I was fired."  And he required her to make her decision

by noon the following day.  [Doc # 31, Ex 4, 126- 27, 134]  While this evidence is disputed by

HSS, I find that the alleged statements by Mr. Mongeau create a disputed issue of fact as to

whether Plaintiff was constructively terminated and, more importantly, if that constructive

termination was caused by precipitating conduct which involved an official action by HSS.  *See*

*generally Newland v. Stevinson Toyota East, Inc.,* 505 F.Supp.2d 689, 698-99 (D. Colo. 2007)

(noting that the Supreme Court in *Pennsylvania State Police v. Suders, supra*, "has held that

constructive discharge may suffice as a tangible employment action when an official act

underlies the constructive discharge").

Therefore, I conclude that HSS is not entitled to summary judgment on Plaintiff's Hostile Work Environment claim on the basis that she cannot establish employer liability as a matter of law. *See Mallinson - Montague v. Pocrnick,* 224 F.3d 1224, 1228 (10th Cir. 2000)(ruling that an employer is entitled to summary judgment under the *Faragher/Ellerth* affirmative defense "only if the evidence points but one way and is susceptible to no reasonable inferences supporting" the employee).

## C. Retaliation Claim

Finally, HSS contends that it is entitled to summary judgment in its favor on Plaintiff's Retaliation claim.  In order to prove a retaliation claim, the plaintiff bears the burden of proving a *prima facie* case by showing that:  (1) he or she engaged in a protected opposition to discrimination or participated in a proceeding arising out of the discrimination; (2) the defendant took an adverse action against him or her after the protected activity; and (3) a causal connection exists between his or her activity and the adverse action.  *Griffith v. State of Colo., Div. of Youth Services*, 17 F.3d 1323, 1331 (10th Cir. 1994).

HSS first argues that Plaintiff cannot establish that she suffered an adverse employment action.  An adverse employment action must amount to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . causing a significant change in benefits."  *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004)(*citing Burlington Indus. v. Ellerth, supra*, 524 U.S. at 761; *Annett v. University of Kansas*, 371 F.3d 1233, 1237-38 (10th Cir. 2004)).  A constructive discharge may be an adverse employment action "if the working conditions were so objectively intolerable due

22

to the employer's retaliatory acts that a reasonable person in the employee's position would have no other choice but to resign." *Mitchell v. Zia Park, LLC,* 842 F.Supp.2d 1316, 1329 (D.N.M. 2012)(citations omitted).  Alternatively, constructive discharge may be asserted when the employer's discriminatory actions forced the employee to choose between resignation or termination.  *Id.* at 1329-30 (*citing Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 860 (10th Cir. 2007)).

As discussed *supra*, disputed issues of material fact exist as to whether Plaintiff was constructively terminated under the second theory; specifically, whether HSS's actions forced Plaintiff to choose between resignation or ultimate termination.  Although it is HSS's position that Plaintiff's termination was not imminent, and that she was told by Ms. Little only that HSS could possibly terminate her depending on the results of the forthcoming investigation into her workplace actions, when Plaintiff's deposition testimony is viewed in the light most favorable to her, I find that there is a disputed issue of material fact as to whether Plaintiff was constructively discharged precluding summary judgment in favor of HSS.  *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998)(requiring courts to liberally construe the phrase adverse employment action, and to decide whether an employment action is considered adverse on a case-by-case basis).  Contrary to HSS's argument, a jury could conclude that a reasonable person in the same position as Plaintiff could have felt coerced into resigning or felt that there was "no other choice but to quit." *Lighton v. University of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000)(applying a "reasonable person test" to determine whether a resignation is voluntary or involuntary).

23

Because I have determined that Plaintiff has met her burden to provided material issues of fact sufficient for a fact finder to conclude that she was constructively discharged, I do not reach or address her argument that her inability to continue to work at North Suburban – which she characterizes as a "termination of her services at North Suburban Medical Center" and HSS characterizes as a "transfer or reassignment" to another facility – was a significant change in employment status that also constituted an adverse employment action.

Finally, to the extent that HSS asserts that Plaintiff cannot establish a causal connection between her protected activity – namely, her complaints and the ultimate reporting of the exposure incident – and the adverse action, its argument is based on the assumption that Plaintiff voluntarily resigned and was not constructively discharged.  Specifically, it maintains that because Plaintiff preemptively quit, instead of being subjected to an investigation and only possibly being fired, no causal connection existed between her complaint of harassment and her resignation.  However, I reject this argument on the grounds that I have concluded that Plaintiff has shown that her termination could be found by a jury to constitute a constructive discharge. Rather, I agree with Plaintiff that she has met her burden to show a casual connection between her complaint related to the exposure incident (on January 8) and her constructive termination (on January 14) based on temporal proximity of approximately six days.  *See Annett v. University of Kansas*, *supra*, 371 F.3d at 1239-40 (to establish a causal connection for a *prima facie* case, the plaintiff  may proffer "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action")(*quoting Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1320 (10th Cir. 1999)).  As such, I conclude that Plaintiff has made out her *prima facie* case of retaliation and, as such, HSS is not entitled to

24

summary judgment in its favor on her Retaliation claim.

## V. CONCLUSION

ACCORDINGLY, I GRANT the Motion for Summary Judgment filed by Defendant HCA-HealthONE, LLC, d/b/a North Suburban Medical Center [**Doc # 28**] and, as such, I GRANT summary judgment in its favor, I DISMISS Plaintiff's case against it, and I AWARD costs to Defendant HealthONE/North Suburban.

In addition, I GRANT IN PART AND DENY IN PART the Motion for Summary Judgment filed by Defendant HSS, Inc., d/b/a Hospital Shared Services, Inc. [**Doc # 27**], as follows:  I GRANT the motion as to Plaintiff's Title VII claim for Gender Discrimination and, as such, I ENTER summary judgment in favor of HSS on that claim, but I DENY the motion as to Plaintiff's Title VII Hostile Work Environment claim and her Title VII Retaliation claim.

Dated: November   13  , 2012 in Denver, Colorado.

BY THE COURT:

    s/Lewis T. Babcock                                   
LEWIS T. BABCOCK, JUDGE